577 So.2d 195 (1991)
UNITED COMPANIES LIFE INSURANCE COMPANY
v.
CITY OF BATON ROUGE, et al.
consolidated with
UNITED COMPANIES FINANCIAL CORPORATION
v.
CITY OF BATON ROUGE, et al.
Nos. 89 CA 1958, 89 CA 1959.
Court of Appeal of Louisiana, First Circuit.
March 5, 1991.
*196 Theodore L. Jones, Elizabeth Amos, Baton Rouge, for plaintiff-appellant United Companies Life Ins. Co.United Companies Financial Corp.
Gordon A. Pugh, Baton Rouge, for defendant-appellee City of Baton Rouge, etc., et al.
Before LOTTINGER, SHORTESS and CARTER, JJ.
SHORTESS, Judge.
These suits concern appeals taken by United Companies Life Insurance Company and its subsidiary corporation United Companies Financial Corporation (plaintiffs) from adverse judgments that award to the City of Baton Rouge/Parish of East Baton Rouge[1] (defendant) delinquent sales taxes based on retail purchases which were not collected and remitted by various vendors of defendant.
In 1984, defendant conducted a sales and use tax audit of plaintiffs. Taxes covering a period of three and one-half years, from January 1981 to July 1984, were assessed against plaintiffs. The assessment was based upon retail purchases made by plaintiffs from local vendors. Plaintiffs paid the taxes under protest and subsequently filed suit to recover the amounts paid. The trial court ruled adversely to plaintiffs, and they have brought this appeal.
Plaintiffs have limited their appeal to three assignments of error. First, they assert that the Louisiana sales and use tax law only authorizes defendant to pursue the seller for recovery of the unpaid tax. However, a contrary position is consistently taken by the courts of this state. Bill Roberts, Inc. v. McNamara, 539 So.2d 1226, 1229 (La.1989); United Companies Printing Co. v. City of Baton Rouge, 569 So.2d 186, 188 (La.App. 1st Cir.1990), writ denied, 572 So.2d 73 (La.1991); McNamara v. Oilfield Const. Co., Inc., 417 So.2d 1311, 1315 (La.App. 3d Cir.), writ denied, 422 So.2d 157 (La.1982); and Collector of Revenue v. J.L. Richardson Co., 247 So.2d 151, 157 (La.App. 4th Cir.), writ refused, 258 La. 915, 248 So.2d 586 (1971). The rationale behind these cases is grounded in the law of agency. "If the dealer in collecting a sales tax from the purchaser is acting in its capacity as an agent for the State, it would seem logical to assume that the State as principal should not be precluded from collecting the tax directly from the purchaser and not through its agent." J.L. Richardson Co., 247 So.2d at 157. The trial court's ruling on this issue is not manifestly erroneous.
Next, plaintiffs contend that the tax ordinances do not authorize the city to recover attorney fees when delinquent sales taxes are paid under protest. Instead, they urge that attorney fees are recoverable only in a collection action. This assignment of error is without merit. South Central Bell Telephone Co. v. Traigle, 367 So.2d 1143, 1150-51 (La.1978), (Whether the suit is for collection or refund is not determinative. The collection of taxes is not complete until the state obtains full use of the funds); See also United Companies Printing Co. v. City of Baton Rouge, 569 So.2d at 189 (in which the Traigle rationale is applied to the city-parish ordinances in question).
Finally, plaintiffs contend that certain software purchased during the period covered by the assessment is intangible personal property not subject to tax. During the period in question, plaintiffs purchased approximately $243,880.00 in computer software from International Business Machines Corporation (IBM). IBM failed to collect and remit the appropriate sales tax, which subsequently resulted in defendant's assessment against plaintiffs for approximately $7,000.00 in overdue software taxes plus interest.
City-Parish sales tax is imposed on all "tangible personal property," meaning property that can be seen, weighed, measured, *197 felt, or touched, or is otherwise perceptible to the senses. A regulation published by the Louisiana Department of Taxation was issued to provide guidance in determining whether computer software is an intangible exempt from taxation. The regulation as written at the time in question provided that when the selling price of the software is separately set out on the dealer invoice and does not constitute an inseparable part of the hardware, the software shall not be subject to sales tax. In 1984, the regulation was rewritten to also exclude from taxation software that is "canned." In other words, software that is pre-written for use by more than one customer is exempt from tax. The amendment also provided that it is to be applied on a prospective basis application only and will not affect tax liability for periods prior to the effective date shown. Plaintiffs rely heavily on the state regulation as written prior to the 1984 amendment in their argument that software purchased from IBM is excluded from taxation.
At the hearing the regulations published by the Louisiana Department of Taxation were not entered into evidence. The only detailed discussion concerning the taxability of software came via the testimony of Gerald O. Boykin, defendant's supervisor in charge of auditing. Boykin testified that the city-parish used a canned/noncanned distinction to determine the taxability of software, apparently similar to the state regulations as written after the 1984 amendment.
The city-parish ordinances in question authorize the Director of Finance for East Baton Rouge Parish to make and publish reasonable rules for the enforcement and collection of sales taxes. Plaintiffs did not place into evidence any regulations which may have been promulgated by the Finance Director. Nor has plaintiff cited to us any authority by which the city-parish adopted the state regulations by reference.[2] Assuming for the sake of argument the correctness of plaintiffs' assertions concerning the applicability of the state regulations, we find that plaintiffs are still not entitled to the relief they seek.
If both elements contained in the regulation (as written prior to the 1984 amendment) are met, i.e., the selling price is separately set out on the dealer invoice and the software does not constitute an inseparable part of hardware, the software is considered an intangible not subject to sales tax. The cited regulation is considered an exemption from taxation. McNamara v. Electrode Corp., 418 So.2d 652, 662 (La.App. 1st Cir.), writ denied, 420 So.2d 986 (La.1982). Exemptions from taxation are to be strictly construed against the person claiming the exemption, and they must be clearly and affirmatively established. Bill Roberts, Inc. v. McNamara, 539 So.2d at 1229.
The price of the software was separately stated. However, plaintiffs presented virtually no specific evidence concerning the separability of the software from the hardware. On direct examination Henry McCall, senior vice president of United Companies Financial Corporation, stated without elaboration that the software was not taxable during the time period in question. When asked why McCall stated: "It would have been an intangible type property, I would imagine, or considered to be...." Most of the evidence actually presented occurred in the following exchange between McCall and Gordon Pugh, attorney for defendant.
Q. Now, you referred to, you might want to look at it again, to Exhibit-14, the IBM and that shows rental of equipment and software, what kind of software is that?
A. What do you mean "what kind of software"? I'm not sure what you're asking, sir.
Q. Was that software particularly designed for your company or was that what we call software that I could go buy myself and use if I had a similar computer?

*198 A. Well, any software normally, uh, in canned software has modification that has to be done to it.
Q. But this is canned software that you may add some modification to, after you buy it?
A. Just from these notations on this invoice, sir, I couldn't tell you yes or no. All I can tell from this, it is software and normally every time I've ever fooled with software there are modifications you make to software to fit your needs.
Q. I see. Modifications that you, United Company, makes to the software after you buy it, is that correct?
A. When you say "United Company" you're talking about our personnel or [are] you talking about outside personnel or whom?
Q. Well, either your personnel make the modifications or you bring in a hired consultant to do it, is that not correct?
A. Let's say modifications are made.
Q. But they're made after you buy this canned software from IBM, is that correct?
A. Yes, the modifications would be after delivery of the software to us.
McCall's testimony does not specifically address the particular software in question, but instead addresses software in general.
Similarly, Boykin's testimony provided no clear answers to whether the software is a central part of the computer. When questioned about why some software was taxed and other software was not, he replied that rented software is considered "canned" software and is subject to tax. When queried as to specific transactions, Boykin's responses indicated no independent recollection of the matter.
In order to qualify for the software exemption, plaintiffs had to prove that the software was part of the central or basic operational program of the computer; this they failed to establish clearly and unequivocally. Bill Roberts, Inc. v. McNamara, 539 So.2d at 1229.
Also, the trial court's ruling on this aspect of the case is most helpful:
Issue Two: What are the taxes owed on?
(A) Computer software; the plaintiffs argued that the software it purchased is an intangible item and the tax assessed on it was not due. The defendants argued that the tax was owed because canned software is a tangible item, not an intangible item.
Sales and use taxes are only assessed upon tangible personal property. There is a distinction between canned software and software specifically designed for a particular program. The former is considered tangible property while the latter is considered intangible property.
The record reflects that the software purchased by the plaintiffs was canned software. Therefore, it is tangible personal property and the sales and/or use tax was correctly assessed by the taxing authority.
This ruling was not clearly wrong.
The judgment of the trial court is hereby affirmed at plaintiff's cost.
AFFIRMED.
NOTES
[1] Additional nominal defendants are the Department of Finance, Revenue Division, Otha Lynn Scofield, individually and in his capacity as Director of Finance.
[2] Moreover, it is unlikely that Louisiana Code of Evidence article 202 grants us the discretion to take judicial notice of a regulation which is promulgated by a political subdivision of the state and which is generally not made widely available.